Antonio Rojas & Co., Inc., Plaintiff and Appellee, *v.* Pío Luna, Defendant and Appellant.

No. 4899.   Argued June 25, 1929.—Decided July 9, 1929.

*C. Domínguez Rubio* for the appellant.   *M. Guzmán Texidor* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

In 1914 Salvador Ruiz purchased 45 *cuerdas* of land bounded on the north by Carlos J. Marrero, on the south by Genaro Zayas and Tomás Pagán, on the east by the road from Barranquitas to Aibonito and on the west by the brook Helechal.   Later he sold twenty-four *cuerdas* to José Marrero, and two *cuerdas* on the west to Sinforoso Luna.   Next he sold 1.25 *cuerdas* to Ramón Alicea, who subsequently sold to José Rochet.   Silverio Rivera bought the 1.25 *cuerdas* from Rochet and thereafter acquired from Ruiz a strip of .62 *cuerdas,* thus making a parcel of 1.87 *cuerdas,* bounded on the west, by the brook Helechal and adjoining the two *cuerdas* belonging to Sinforoso Luna.   Thereafter Pío Luna, who lived across the creek on a half *cuerda* of land (opposite the 1.87 *cuerdas*), purchased the latter from a vendee of Rivera.   The sale to Alicea was made in May, 1919, and the sale to Rivera a year later.

In September, 1927, Ruiz conveyed to Antonio Rojas & Co., Inc., the remainder of the 45 *cuerdas*.   The parcel so transferred is described in the deed as nineteen *cuerdas* bounded on the north by lands of Gerónimo Vallecillo, on the south by the estate of Carlos J. Marrero, on the east by the road to Barranquitas at the junction with the road between Coamo and Aibonito, and on the west by the brook Helechal.

In negotiating for the purchase of the 19 *cuerdas* the corporation was represented by its treasurer, Simón Rojas. Ruiz says that he sold only what remained of the 45 *cuerdas;* that before the deed was executed he went over the property with Simón Rojas, showed him the land owned by Sinforoso Luna and by Pío Luna, pointed out the boundary lines and told him that these previous transfers were to be respected. Ruiz also says that he did not talk with the notary before signing the deed and did not furnish the data for the description of the 19 *cuerdas* contained therein. The testimony of Ruiz is uncontradicted, although Simón Rojas was a witness for plaintiff and the attorney for plaintiff was the notary who drafted the deed. Indeed there is practically no conflict anywhere in the evidence adduced at the trial.

Salvador Ruiz continued to live on the property after the sale in September, 1927, until some time in February, 1928. He says that during that period the overseers and employees of Rojas & Co. did not trespass upon the land possessed by Pío Luna nor question his right of possession. In November, 1928, Rojas & Co. applied for an injunction to restrain Pío Luna from entering upon the land of petitioner, from permitting his live stock to enter thereon and from exercising any act of ownership in connection therewith. The district judge, after a hearing on an order to show cause why a preliminary injunction should not issue, decreed, instead of the proposed preliminary writ, a permanent injunction.

There are some loose statements in the stenographic record about stock that was let loose upon the 1.87 *cuerdas* and passed therefrom to the lands of petitioner, but there is no specific instance of such a trespass. It is a significant circumstance that when petitioner decided to impound Pío Luna's cow it became necessary to go upon the 1.87 *cuerdas* where the cow was tethered at the time. On another occasion Luna began to build a wire fence along the eastern boundary of the 1.87 *cuerdas* and as a means to this end cut six stakes upon the same property. Thereupon Simón Rojas, the treas-

urer of petitioner, appeared with a policeman and the justice of the peace, and the policeman made a note of the six stumps, from which the stakes had been cut. Pío then offered to remove the fence if the corporation would withdraw the criminal charge, but his offer was rejected. This incident seems to have occurred shortly before the trial and the record does not disclose the result of the criminal prosecution.

We have outlined facts enough to indicate that a question of title was involved and that the corporation was fully informed as to the previous sale to Alicea and as to the possession by Luna under a claim of ownership at the time of the purchase of the remainder of the 45 *cuerdas* from Ruiz.

The statement of the case and opinion filed by the trial judge is self-explanatory, as will appear from the following extract:

"We do not pretend to deny, and rather are inclined to believe, for reasons arising out of the evidence itself, that defendant made the purchase as alleged by him and that Salvador Ruiz effected a double sale of the same parcel of land. It is also undeniable, however, that as to the relief prayed for, the position of plaintiff is advantageous (being favored by the provisions of section 1376 of the Civil Code) and should receive due protection from the courts of justice in order to maintain the rights which the complainant acquired upon recording the ownership of the property, of which it undoubtedly was in actual and civil possession when the events occurred which gave rise to this proceeding. Why, then, deny a petition which we consider just and lawful in order to open the way to new actions and a multiplicity of proceedings in which the right of the complainant would finally prevail? It has been shown, therefore, that complainant was disturbed in the enjoyment of its property by violent acts of defendant, who trespasses upon it and causes damages as alleged in the complaint, and it is the opinion of the court that the writ prayed for should issue."

We find nothing in the evidence to justify the finding that petitioner was at any time in the actual possession of the 1.87 *cuerdas* in controversy. On the contrary, the testimony for petitioner as a whole tends to show that petitioner had been

continuously prevented from exercising any effective possession or control of the same by the acts of defendant. The testimony for defendant also shows that he kept his cow and perhaps a calf and a mare tethered upon so much of the 1.87 *cuerdas* as was available for grazing purposes, while the remainder he had under cultivation. This is perhaps the most logical explanation as to why petitioner did not resort to the statutory proceeding for the protection by injunction of the actual possession of real property.

Section 1376 of the Civil Code is set forth in *Abella* v. *Antuñano et al.,* decided more than 20 years ago, 14 P.R.R. 485, where the first, second, fourth, fifth and eighth paragraphs of the headnotes read as follows:

"In the case of a double sale of real property, the acquiring party who first obtains the admission of his deed to record is the owner thereof. Although section 1376 of the Revised Civil Code does not expressly require that the acquiring party should act in good faith in the purchase of real property, good faith is nevertheless a necessary requisite for the purpose of admission of the deed to record.

"Although section 1376 of the Revised Civil Code does not provide that the preexistence of the right of a person conveying property is necessary, still it must be understood that this circumstance is one of the suppositions from which that section sets out.

"The provisions of articles 36 and 38 of the Mortgage Law are applicable to cases of double sale provided the acquisition of real property in good faith and recorded in the registry is involved, and this is not so in the case at bar.

"A person acquiring in bad faith property which had been sold twice can not claim that he is a third party in order to secure protection of his rights by the record of his deed in the registry of property.

"Where a party sells property to one person and subsequently sells the same property to another person, the second purchaser knowing that the property had been previously sold, although no deed had been executed, the second sale is null and void because no one can convey the ownership of a thing which he no longer owns, and this defect is not removed by the admission of a deed to record in the registry of property, according to the provisions of article 35 of the Mortgage Law."

See also *Miranda* v. *Municipality of Aguadilla, ante,* p. 422.

The proceeding by injunction is not adapted to the determination of conflicting claims to real property, and ordinarily an injunction will not be granted where the right of a petitioner is doubtful until the same has been duly established by an action at law. Certainly the remedy can not be successfully invoked by a petitioner in order to oust an alleged owner of real estate whose title is *prima facie* superior to that of such petitioner and thereby to force the defendant in the injunction proceeding into the more difficult and hazardous position of plaintiff in a revindicatory action.

The decree appealed from will be reversed with costs to defendant.

### ON MOTION FOR REHEARING

Counsel for appellee moves for an amendment of the judgment rendered on appeal so as to direct a continuation of the proceeding to a final conclusion in the court below.

The motion states that petitioner presented only a part of his evidence at the hearing on the order to show cause, and that the greater part of such evidence was held in reserve with a view to a subsequent hearing on the question of making the temporary injunction permanent.

The order to show cause, which was accompanied by a temporary restraining order, was not in terms limited to the question as to whether or not a further preliminary writ should issue. In response to this order defendant filed his answer to the petition. The decree of the court below converted the temporary restraining order into a permanent injunction. The brief for appellee, in support of that decree, opens with a reference first to the petition for an injunction, second to the answer filed by defendant, and third to the final decree entered by the district court. It does not contain any intimation that the result below exceeded the expectation of petitioner. Appellee was quite content, both in the court below and in this court, to have the decree of the district court stand as a final determination of the whole controversy.

Simón Rojas, treasurer of the plaintiff corporation, and Eduardo Rosario, petitioner's plantation overseer, were present at the trial and testified as witnesses for plaintiff. The testimony for defendant, as to actual possession by him of the land in controversy and as to a purchase made by petitioner with full knowledge of a previous sale to defendant, points to Simón Rojas and Eduardo Rosario as the necessary witnesses in rebuttal. Nevertheless, neither of these witnesses returned to the stand.

The motion does not indicate the nature of the evidence withheld by petitioner. We can not assume that it would eliminate the question of title. Defendant, therefore, should not be subjected to the expense and annoyance of further proceedings herein.

It was the purpose of this court, as indicated by the award of costs, to dismiss the action. The judgment, however, followed the letter rather than the spirit of the last paragraph of the opinion.

Instead of the amendment suggested by appellee, the judgment of this court will be modified so as to include a formal dismissal of the action.